**Janeen O. LONSDORF,
Plaintiff–Appellant,**

v.

**Ted SEEFELDT, Jim Jenkins, Roger Johnson, Jerry Pionkowski, Jack Deyong, Group Health Cooperative, HMO, Defendants–Appellees.**

No. 94–2745.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1994.

Decided Feb. 15, 1995.

Robert Kasieta (argued), David J. Pliner, Bell, Metzner, Gierhart & Moore, Madison, WI, for Janeen O. Lonsdorf.

Gregory P. Seibold, Murphy & Desmond, Richard Briles Moriarty (argued), Wisconsin Dept. of Justice, Madison, WI, for Ted Seefeldt.

Richard Briles Moriarty, Wisconsin Dept. of Justice, Madison, WI, for Jim Jenkins, Roger Johnson, Jerry Pionkowski, Jack Deyong, Group Health Co-op, HMO.

Before POSNER, Chief Judge, BRIGHT,[*] and KANNE, Circuit Judges.

BRIGHT, Circuit Judge.

Janeen O. Lonsdorf, an entry level Excise Tax Investigator for the Wisconsin Department of Revenue, filed suit against Ted Seefeldt, an Excise Tax Agent, under 42 U.S.C. § 1983, claiming that Seefeldt sexually harassed her during numerous incidents which occurred while Seefeldt was providing employment training to Lonsdorf. Upon trial, the jury returned a verdict of dismissal in favor of defendant Seefeldt. Lonsdorf then moved for a new trial under Fed.R.Civ.P. 59(a) and for appropriate relief under Fed. R.Civ.P. 60(b)(3),[1] claiming that Seefeldt materially altered a document admitted into evidence and relied on those alterations as providing a strong inference that Seefeldt had not sexually harassed her. The district court denied Lonsdorf's request for relief, and Lonsdorf appeals. For the reasons discussed below, we reverse the district court's denial of Lonsdorf's motion pursuant to Fed. R.Civ.P. 60(b)(3).

## I. BACKGROUND

In 1991, the Wisconsin Department of Revenue hired Janeen O. Lonsdorf as an Excise Tax Investigator I. An Investigator I position, the entry level training job, requires certification as a licensed law enforcement officer and is trained in the undercover investigation and inspection of premises that sell alcohol and tobacco for possible criminal violations. The Investigator I position is a one-year probationary job, which may lead to the positions of Excise Tax Investigator II and III.

Excise Tax Agents train the entry level Excise Tax Investigators. Each agent is assigned a different portion of the state and the investigators circulate to train with different agents. The Wisconsin Department of Revenue assigned Ted Seefeldt, an Excise Tax Agent, to train Lonsdorf for a two-week period. Seefeldt had never trained a female investigator prior to this assignment. During the training period, Lonsdorf and Seefeldt spent virtually all day, every day, together. They traveled extensively, eating at

---

* The Honorable Myron H. Bright, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. Fed.R.Civ.P. 60(b)(3) provides:
   On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... The motion shall be made within a reasonable time, ... and ... not more than one year after the judgment, order, or proceeding was entered or taken.

the same restaurants and staying overnight at the same hotels.

At the trial, Lonsdorf contended Seefeldt sexually harassed her during this training period and alleged that specific incidents of harassment occurred. Lonsdorf testified that these incidents included inviting her to dinner, commenting on her physical appearance, suggesting that she wear provocative clothing, following her uninvited into her hotel room and suggesting that Lonsdorf stretch out on his hotel bed while he was on a telephone call. Seefeldt denied certain incidents and as to others claimed that the incidents were merely part of Lonsdorf's training which she misconstrued as sexual harassment. For example, going to dinner in the evening was part of the training schedule and commenting on her physical appearance related to her physical appearance for undercover work.

During a pre-trial discovery deposition taken by Lonsdorf's counsel, Seefeldt produced a copy of a written training schedule which he ostensibly prepared prior to Lonsdorf's training. This two-page document outlined the proposed training activities.

The first page of the schedule contained the following entry for Thursday, July 18:

* Dist. 4 Radio Use + Intro.

* Wausau Office Intro

* General Insp.'s—**Possible late openers**

(emphasis added) Plaintiff's Exh. 3, Supp. App. at 130.

The entry for Friday, July 19, also located on the first page, states:

* Cig. counterfeiting
* Wis. SS Book + Info.
* General Insp
* Review       **Dress—count.**
* Travel          **—insp.'s**
                     **—invest.'s**

(emphasis added) *Id.*

At trial, Lonsdorf marked the two-page training schedule, previously produced by Seefeldt, as plaintiff's exhibits three and four. Seefeldt's counsel, during his closing argument, showed the training schedule to the jury and particularly stressed the language we have emphasized in plaintiff's exhibit three as evidence that Seefeldt did not harass Lonsdorf on the days stated in the schedule, as had been testified to by Lonsdorf, but that Lonsdorf engaged in prescribed training as specified in the exhibit's comments. Seefeldt's counsel in final argument effectively utilized this training schedule to demonstrate that Lonsdorf mistakenly viewed training exercises as sexual harassment. The argument gave added meaning to the defense by affirmatively responding to the specific incidents of harassment which allegedly took place on July 18th and 19th. During closing arguments, as well as some of the trial, Lonsdorf was not present in the courtroom, on advice of her therapist.

Subsequent to the verdict, Lonsdorf's counsel relayed the substance of the closing argument of Seefeldt's counsel to Lonsdorf, including counsel's reliance on the written training schedule as evidence that Seefeldt did not commit intentional sexual harassment. Lonsdorf then recalled that Seefeldt had given her a carbon copy of the training schedule at the end of her first week of training. Lonsdorf found her copy of the training schedule and only then discovered that the language emphasized in plaintiff's exhibit three, reproduced *supra,* the same language that Seefeldt's counsel relied upon during closing argument, did not appear in her carbon copy of the training schedule. Lonsdorf and her counsel then concluded that Seefeldt had produced an altered schedule for evidence.

Lonsdorf moved for relief for the alleged fraud and misconduct by Seefeldt pursuant to Fed.R.Civ.P. 60(b)(3) and moved for a new trial under Rule 59(a) for alleged error on an evidentiary issue. On the fraud and misconduct claim, Lonsdorf contended that the closing argument prejudiced her because it was based on an altered and fraudulent copy of the training schedule. Seefeldt, in response to the motion, did not deny the allegation that the training schedule had been altered and offered no explanation for the alterations. Instead, Seefeldt resisted the motion by claiming that Lonsdorf failed to object to the training schedule at Seefeldt's deposition in which Lonsdorf was present, and Lonsdorf always possessed a copy of the training schedule but failed to take steps to timely

uncover the alleged misconduct and present the issue earlier to the district court.

Lonsdorf asserted that she did not actually discover the alterations to the training schedule until after closing argument. As soon as Lonsdorf suspected that the training schedule had been fraudulently altered, she promptly filed her Rule 60(b)(3) motion.

The district court denied Lonsdorf's motion determining that Lonsdorf should have previously challenged the alleged misconduct because she had access to the disputed information and failed to discover that Seefeldt had altered the training schedule in a diligent and timely fashion. In addition, the district court rejected the evidentiary issue upon which Lonsdorf seeks a new trial under Fed. R.Civ.P. 59(a).[2] On appeal, Lonsdorf raises essentially the same issues she raised below.

## II. DISCUSSION

The pivotal question in this case is whether Seefeldt's alleged misconduct in presenting a presumptively forged document to Lonsdorf, a document which was entered into evidence, entitles Lonsdorf to relief under Fed. R.Civ.P. 60(b)(3). Based on the record before this court, we hold that Lonsdorf is entitled to relief, and that appropriate relief is to grant a new trial. The district court relied upon an improper standard in denying Lonsdorf relief.

In order to obtain relief under Fed. R.Civ.P. 60(b)(3), the movant must prove that: (1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial. *Green v. Foley*, 856 F.2d 660, 665 (4th Cir.1988), *cert. denied*, 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989). In considering these requirements, a court must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts. *Square Construction Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir.1981).

A party seeking relief must prove that they are entitled to a new trial by clear and convincing evidence. *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir.1983).

Fed.R.Civ.P. 60(b)(3) applies to both intentional and unintentional misrepresentations. *Plattner v. Strick Corp.*, 102 F.R.D. 612, 614 (N.D.Ill.1984). A determination of whether the alleged misrepresentation altered the result of the case is unnecessary because Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict. *Id.* In reviewing the evidence to determine whether the district court's denial constituted an abuse of discretion, we must accept as true the movant's undenied allegations. *Ervin*, 701 F.2d at 61.

Based on the record before this court, Lonsdorf satisfied the three requirements for granting a Rule 60(b)(3) motion. First, Lonsdorf presented a meritorious claim at trial by presenting a prima facie case of sexual harassment, demonstrated by the district court's denial of Seefeldt's motion for a judgment as a matter of law.

Second, Lonsdorf established that the training schedule was altered. She submitted an affidavit to the court which set forth details of how she discovered the misrepresentation. Seefeldt has never denied the alterations of the training schedule or countered Lonsdorf's allegations of misrepresentation. We accept Lonsdorf's undenied factual allegations as true.

Third, Lonsdorf was unfairly prejudiced by the closing argument of Seefeldt's counsel because it was based, in part, on the altered training schedule. As we have observed, it is unnecessary for Lonsdorf to establish that the misrepresentation altered the outcome of the trial. It is sufficient that prejudice has occurred. Here, the record disclosed ample prejudice in the use of the fraudulent evidence. We conclude that Lonsdorf has satisfied, by clear and convincing evidence, all three requirements for the granting of a new trial pursuant to Fed.R.Civ.P. 60(b)(3).

---

2. The district court on relevancy grounds refused to permit testimony relating to the work rules of the State of Wisconsin Department of Revenue and refused to allow the jury to inspect the employee handbook containing those rules.

■ The district court applied an incorrect standard in denying Lonsdorf's claim under Rule 60(b)(3) on grounds Lonsdorf had failed to discover the misrepresentation in a diligent and timely fashion. The evidence in the record does not support a finding that Lonsdorf had failed to discover the misrepresentation in a timely fashion, nor does it demonstrate that Lonsdorf is merely attempting to relitigate the case. To the contrary, the record reflects that during discovery many documents were produced, and Lonsdorf had not previously realized that a falsified document existed. Moreover, Rule 60(b)(3) does not refer to timeliness in discovering the fraud, but only that the motion be made within a reasonable time. Indeed, in litigation the burden is on the attorney who discovers client dishonesty to take corrective action. *See Nix v. Whiteside,* 475 U.S. 157, 166, 106 S.Ct. 988, 994, 89 L.Ed.2d 123 (1986) (discussing proper ethical conduct of lawyer to threatened client perjury). A litigant, however, should not be required to assume that falsified documents are being produced by an opposing party.[3]

■ It is patently obvious that Seefeldt benefited from the use of a fraudulently altered document and Lonsdorf suffered an injustice. Fed.R.Civ.P. 60(b)(3) provides an escape valve to protect the fairness and integrity of litigation in federal courts. *See Rozier v. Ford Motor Company,* 573 F.2d 1332, 1339 (5th Cir.1978). It must be noted, however, that the responsibility for altering the training schedule has not been established on this appeal. Seefeldt's appellate brief merely mentions the issue of misrepresentation, allotting one page of a fifty-page brief to the gravamen of this appeal.[4] Although Seefeldt's trial counsel did not represent Seefeldt on appeal, no indication of unethical conduct on the part of Seefeldt's counsel exists. Indeed, at oral argument Lonsdorf's attorney expressed his view that Seefeldt's trial counsel at all times has conducted himself in an upright and completely ethical fashion. The inference exists that Seefeldt bears sole responsibility for presenting the altered copy.

■ Lonsdorf also claims that the district court erred by denying her motion for a new trial pursuant to Fed.R.Civ.P. 59(a), arguing that the district court erred by prohibiting evidence regarding the Wisconsin Department of Revenue's sexual harassment work rules. In our view, this ruling did not unduly prejudice Lonsdorf and does not justify a new trial. Nevertheless, the issue of admission may be reconsidered, should it arise again on a new trial.

■ Finally, while this appeal was under submission, Seefeldt filed a motion requesting "further proceedings" seeking leave to file a document referred to as the "Lonsdorf carbon copy" and to file either an affidavit or to have Seefeldt submit to a deposition concerning the altered document. We reject this belated attempt to introduce new material into the record on appeal. *See, e.g., Holmberg v. Baxter Healthcare Corp.,* 901 F.2d 1387, 1392 (7th Cir.1990). We also deny Lonsdorf's request for sanctions on this occasion.

---

**3.** Unfortunately, today the general consensus is that discovery misconduct may be widespread. *See* Edward J. Imwinkelried, *A New Antidote for an Opponent's Pretrial Discovery Misconduct: Treating the Misconduct at Trial as an Admission by Conduct of the Weakness of the Opponent's Case,* 1993 B.Y.U.L.Rev. 793, 794 (1993).

**4.** Seefeldt argues that based upon the *Sea Clammers* doctrine, the section 1983 remedies Lonsdorf seeks are precluded by the remedies available under Title VII. The *Sea Clammers* doctrine applies when the passage of subsequent legislation represents a Congressional intent to preclude the remedy of suits under section 1983. We observe that the *Sea Clammers* doctrine does not apply because the conduct in question in this case occurred prior to the amendments to Title VII.

The *Sea Clammers* doctrine has been stated as follows:

When the remedial devices provided in a particular [federal statute] are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.... [T]he existence of these express remedies [under that particular statute] demonstrates ... that Congress intended to ... supplant any remedy that otherwise would be available under § 1983.

*Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 20–21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981).

## III. CONCLUSION

Lonsdorf has satisfied the requirements of Fed.R.Civ.P. 60(b)(3), and the appropriate relief in this case is the granting of a new trial. Accordingly, we remand this case to the district court for a new trial.