BIC CORP., PLAINTIFF *v.* UNITED STATES OF AMERICA AND U.S. INTERNATIONAL TRADE COMMISSION, DEFENDANTS, AND THAI MERRY CO. LTD., NEW YORK LIGHTER CO., INC., AND POLYCITY INDUSTRIAL LTD., DEFENDANT-INTERVENORS

Consolidated Court No. 95–05–00726

(Dated August 14, 1998)

*Collier, Shannon, Rill & Scott*, PLLC *(Paul C. Rosenthal, Robin H. Gilbert, Lynn E. Duffy,* and *Eric R. McClafferty),* for plaintiff.

*Lyn M. Schlitt,* General Counsel, *James A. Toupin,* Deputy General Counsel, Office of General Counsel United States International Trade Commission *(Rhonda M. Hughes),* for defendant.

*Willkie Farr & Gallagher (Kenneth J. Pierce* and *William B. Lindsey),* for defendant-intervenor Thai Merry Co.

## MEMORANDUM OPINION AND ORDER

GOLDBERG, *Judge:* This matter is before the Court on plaintiff's motion for relief from judgment and order in *BIC Corp. v. United States*, 21 CIT 448, 964 F. Supp. 391 (1997), *aff'd mem.*, ___ Fed. Cir (T) ___, ___ F.3d ___ (judgment entered Mar. 11, 1998, mandate pending) *("BIC I"),* and request for remand pursuant to USCIT Rule 60(b)(3). Plaintiff, BIC Corporation ("BIC"), alleges that representatives from Calico Brands, Inc. ("Calico") and Thai Merry Co., Ltd. ("Thai Merry") submitted fraudulent information to the United States International Trade Commission ("ITC") in connection with the ITC's investigation of alleged less than fair value ("LTFV") imports of disposable cigarette lighters from Thailand. *See Disposable Lighters from Thailand,* 60 Fed. Reg. 21,007 (1995) (final negative determination) *("Thai Lighters").* In *BIC I,* this Court sustained the ITC's determination that BIC was neither experiencing, nor threatened by, material injury by reason of the LTFV imports of lighters from Thailand. *See BIC I,* 21 CIT 448, 964 F. Supp. 391. Familiarity with this Court's opinion in *BIC I* is presumed.

Under USCIT Rule 60(b)(3), the Court has the discretion to relieve a party from a final judgment when the moving party has demonstrated by clear and convincing evidence (1) that an adverse party has engaged in fraud, misrepresentation, or other misconduct; and (2) that the fraud, misrepresentation, or other misconduct prevented the moving party from fully and fairly presenting its case. *See* USCIT R. 60(b)(3); *see also Cowan v. Strafford R-VI School Dist.*, 140 F.3d 1153, 1159 (8th Cir. 1998); *Government Fin. Servs. One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 772 (5th Cir. 1995); *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995); *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995); *Shepherd v. American Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 926 (1st Cir. 1988). Thus, the Court assesses whether the evidence presented by BIC satisfies these

two requirements. Importantly, the Court does not do so in a vacuum; instead, "[i]n considering these requirements, a court must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all the facts." *Lonsdorf*, 47 F.3d at 897 (citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981). Having done so, the Court concludes that BIC has failed to present anything that even approaches clear and convincing evidence that the statements made by representatives of Calico and Thai Merry before the ITC were fraudulent.

The only support BIC offers for its motion for relief are three declarations of Felix Hon, the president and owner of Calico.[1] According to BIC, these declarations demonstrate that representatives of Calico and Thai Merry lied to the ITC about the degree to which LTFV imports of Thai Merry's lighters compete against BIC's lighters for sales. In particular, BIC insists that contrary to the representations made to the ITC, the Hon declarations prove that Thai Merry's lighters compete directly with BIC's. BIC's allegations are predicated on the following eight paragraphs.

> I closely follow the products sold by my competitors, including the cigarette lighters sold by BIC. The lighter described in BIC's '657 patent has not been seen in the market place since approximately 1992 or early 1993. We were informed from customers that BIC discontinued the '657 design because the ring structure described in the '657 patent was breaking with repeated flexing and compression during normal use. To the best of my knowledge, BIC no longer manufactures any lighter covered by the '657 patent.

Pl.'s Mem. of Points & Authorities in Supp. of Mot. for Relief from J. & Order & Remand Pursuant to R. 60(b) ("Pl.'s Mem.") at 5–6; Pl.'s Mem., Ex. 1 (Jan. 17, 1997 Hon Decl. ¶ 6) ("Hon Decl. A").

> For the period from 1985 to 1993, we were able to create substantial goodwill in the KING trademark as represented by the fact that American consumers purchased approximately 850,000,000 KING lighters from us during that period. The KING lighters sold from 1985 to 1993 had the trade dress shown in the photographs in Exhibit 4. In 1994, we changed the trade dress when I licensed Honson. The new trade dress continues to have the KING name prominently displayed. Sales of KING lighters from 1994 to date have been approximately 80,000,000 units for total sales to date of KING lighters of approximately 930,000,000 units. The drop in sales during the last two years have been attributable to three causes: (1) the splitting of our sales between SAF-T-LOC and KING; (2) the rise in price of child resistant lighters over the past year; and (3) sales stolen from us by the counterfeit lighters.

---

[1] Calico distributes disposable cigarette lighters in the United States manufactured by Thai Merry in Thailand.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (Feb. 3, 1997 Hon Decl. ¶ 5) ("Hon Decl. B").

> In 1994, when I licensed Honson, my brother and I agreed that Honson should have a new trade dress. I had one of my employees at Calico, Jim Wilson, V.P. of Sales and Marketing, create a new box and store display for the KING lighters. The new trade dress for the box is shown in the photographs in Exhibit 5 and the trade dress for the display merchandisers is shown in the photographs in Exhibit 6. The new trade dress appeared on store shelves in the United States in approximately July, 1994. The trade dress was part of the exclusive licensing agreement to license the KING trademark. As stated above, sales using the new trade dress have been approximately 80,000,000 units to date.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (Hon Decl. B. ¶ 6).

> Over the past two years, disposable lighters have become more expensive to manufacture because of the new legal requirement that they all be child resistant. As a result, retailers are looking for cheaper sources of lighters. The SUPER KING lighters are cheaper than our KING lighters. A case of genuine KING lighters sells in the range of $160–170 per case at the wholesale level. Calico sells its high-end SAF-T-LOC brand at higher prices, which are typically in excess of $250 per case. When Calico purchased a case of the infringing SUPER KING lighters from a vendor, we were charged $130. See Exhibit 12. When Calico purchased a case of counterfeit KIM lighters from a vendor, we were charged $115. See Exhibit 13.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (Hon Decl. B. ¶ 12).

> Exhibit 15 is a photograph showing a side by side comparison of the the [sic] KIM and KING merchandising displays. Exhibit 16 is a side by side comparison of the the [sic] KIM and KING boxes. Exhibit 17 is an example of the box and merchandising display designed by BIC Corporation showing BIC's CHILD GUARD trade dress currently distributed in the cigarette lighter market. Exhibit 18 is an example of the box and merchandising display designed by FMI Inc. showing FMI's IWAX trade dress currently distributed in the cigarette lighter market. Exhibit 19 is an example of the box and merchandising display designed by Centerfire Inc. showing Centerfire's PUSH-N-LIGHT trade dress currently distributed in the cigarette lighter market. All of these companies compete directly with the KING lighters.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (Hon Decl. B. ¶ 15).

> For the period from 1985 to 1993, we were able to create substantial goodwill in the KING trademark as represented by the fact that American consumers purchased approximately 850,000,000 KING lighters from us during that period. The KING lighters sold from 1985 to 1993 had the trade dress shown in the photograph in Exhibit 4. In 1994, we changed the trade dress when I licensed Honson. The new trade dress continues to have the KING name prominently displayed. Sales of KING lighters from 1994 to date have been

approximately 80,000,000 units for total sales to date of KING lighters of approximately 930,000,000 units. The drop in sales during the last two years have been attributable to three causes: (1) the splitting of our sales between SAF-T-LOC and KING; (2) the rise in price of child resistant lighters over the past year[;] and (3) sales stolen from us by the counterfeit lighters.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (May 1, 1997 Hon Decl. ¶ 5) ("Hon Decl. C").

To the best of my knowledge based upon information I have obtained from my distribution network, the defendants have imported at least 6 to 8 containers of counterfeit KIM lighters, which would equal approximately 6,000,000 to 8,000,000 units. The counterfeit products are appearing throughout the country now and I am receiving complaints from my customers concerning both the counterfeit KIM lighter and the infringing SUPER KING lighters. Based upon information that I have obtained from my distribution network, I believe that the defendants have imported approximately 3 to 4 containers of SUPER KING lighters, which would be 3,000,000 to 4,000,000 units. I have been informed that 100,000 infringing SUPER KING boxes have been printed in Hong Kong. That many boxes would hold 50,000,000 lighters. A photograph of the Super KING trade dress is attached as Exhibit 7a.

Pl.'s Mem. at 5–6; Pl.'s Mem., Ex. 1 (Hon Decl. C ¶ 8).

Over the past two years, disposable lighters have become more expensive to manufacture because of the new legal requirement that they all be child resistant. As a result, retailers are looking for cheaper sources of lighters. The SUPER KING lighters manufactured by GYI are cheaper than our KING lighters. As a result, GYI is seriously undercutting the market for genuine KING lighters. A case of genuine KING lighters sells in the range of $160–170 per case at the wholesale level. Calico sells its high-end SAF-T-LOC brand at higher prices, which are typically in excess of $250 per case. When Calico purchased a case of the infringing SUPER KING lighters from a vendor, we were charged $130. See Exhibit 19. When Calico purchased a case of counterfeit KIM lighters from a vendor, we were charged $115. See Exhibit 20.

Pl's Mem. at 5–6; Pl.'s Mem., Ex. 1 (Hon Decl. C ¶ 16).

The Court cannot agree with BIC's interpretation of these paragraphs. Their relevance is questionable and they certainly do not constitute clear and convincing evidence of fraud, or even misrepresentation or other misconduct. First, these eight paragraphs, two of which are identical, are taken from three declarations that were filed in two patent and trademark infringement cases brought by Calico and Thai Merry. *See Thai Merry Co. v. Bic Corp.*, Case No. CV–96–5256 (C.D. Cal.); and *Honson Marketing Group, Inc. v. California King*, Case No. 96–2047 (C.D. Cal.). These cases are completely unrelated to the case at hand. Hon Declaration A pertains to the first action, and Hon Declarations B and C pertain to the second action. While BIC is a defendant in the first

action, it is not even a named party in the second action. *See id.* An astute observer will note that seven of the eight paragraphs highlighted by BIC as persuasive evidence are from the second action.

Second, BIC's "summary" of Hon's statements is misleading and overstates the import of the paragraphs upon which it is based. For example, BIC asserts that these declarations establish that "(1) BIC's lighters are *competitors* of the Thai lighters[; and] (2) [t]he *Thai Merry child-resistant lighter* that was sold during the ITC's period of investigation *competes directly with BIC's child-resistant lighter*." Pl.'s Mem. at 7.

The Court has carefully reviewed all three of the Hon Declarations, including the paragraphs not alluded to by BIC. It has found a total of *three* paragraphs that even mention BIC, and of the three, only two describe it as a competitor. The first is found in Hon Declaration A, which was filed in support of a memorandum opposing BIC's motion for a preliminary injunction in *Thai Merry Co. v. Bic Corp.*. In that declaration, Hon describes BIC's '657 patent. As noted by BIC, paragraph six begins with "I closely follow the products sold by my competitors, including the cigarette lighters sold by BIC." *See* Pl.'s Mem. at 5; Pl.'s Mem., Ex. 1 (Hon Decl. ¶ 6). And the second is found in Hon Declaration B where Hon describes the merchandising displays of a number of lighter manufacturers, including BIC. In so doing, he notes that "[a]ll of these companies compete directly with the KING lighters." Pl.'s Mem., Ex. 1 (Hon Decl. B ¶ 15.). These statements standing alone are patently insufficient to support any finding by the Court that Calico and Thai Merry committed fraud before the ITC.

BIC also makes much of Hon's discussion of the KING and SAF-T-LOC trademarks, arguing that "the very fact that Felix Hon and his fellow plaintiffs have brought trademark infringement cases is stark proof that the *brand names associated with the Thai Merry lighters are valuable* enough to cause their owners to seek damages for their alleged misappropriation." Pl.'s Mot. at 7. BIC asks the Court to infer from this that Thai Merry's lighters compete with BIC's lighters, and any evidence adduced by Calico Brands and Thai Merry in proceedings before the ITC to the contrary is therefore fraudulent. The Court declines to do so.

Hon's statements relating to the KING and SAF-T-LOC trademark were made in connection with a trademark infringement suit in which BIC is not even a party. These statements were designed to demonstrate that the defendants in that suit were producing several different counterfeit lighters that were less safe than the Thai Merry lighters, and were not child-resistant. The Court simply cannot infer from the fact that less safe and cheaper counterfeit lighters competed with Thai Merry's lighters that Thai Merry competed directly with BIC.

Third, there is no evidence that either Calico or Thai Merry prevented BIC from fully and fairly presenting its case before the ITC. The record in *Thai Lighters* demonstrates that both BIC and the ITC knew that Calico sold lighters using the KING and SAF-T-LOC trademarks. *See*

*Disposable Lighters From The People's Republic of China and Thailand,* Inv. Nos. 303–TA–25 and 731–TA–700 & 701 (Preliminary), USITC Pub. 2792 at II–10 (June 1994). Furthermore, the Court reminds BIC that the ITC's negative injury determination was not premised on a finding that the LTFV Thai lighters do not compete with BIC's lighters. *See BIC I,* 21 CIT at 450, 964 F. Supp. at 398–401. Rather, it was based on a finding that the price of the Thai lighters had little effect on the price of BIC's lighters. *See id.* at 399. And, in making this finding, the ITC did not confine its analysis to statements made by representatives of Calico and Thai Merry. *See BIC I,* 21 CIT at 454–458, 964 F. Supp. at 399–401 (citing the confidential staff report, hearings before the ITC, and purchaser questionnaire responses).

Finally, the Court notes that concurrent with the filing of the instant motion, BIC requested the ITC to reopen the record in *Thai Lighters* and to reconsider its negative injury determination in light of the three declarations it presents here. *See* Pl.'s Mem., Ex. 3. The ITC reviewed the declarations and concluded that they did not indicate that representatives of Calico and Thai Merry had committed fraud, perjury, or other misconduct. *See* Def.-Intervenor's Mem. of Points & Authorities in Supp. of Mot. to Dismiss, App. 2 (letter from ITC to BIC, Aug. 19, 1997). To the extent that it is appropriate for the Court to do so, the Court comments on the ITC's decision with approval.

For the foregoing reasons, and upon consideration of Plaintiff's Motion For Relief From Judgment and Order and Request for Remand, Defendant's Response in Opposition thereto, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is denied in all respects.