**Pedro GAYTAN, Plaintiff,**

v.

**Chicago Police Officer David KAPUS, Defendant.**

No. 96 C 393.

United States District Court, N.D. Illinois, Eastern District.

Sept. 2, 1998.

---

Jeffrey H. Haas, Janis M. Susler, Attorney at Law, Chicago, IL, for plaintiff.

Thomas R. Samson, Assistant Corporation Counsel, William E. Bazarek, John F. McGuire, Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Pedro Gaytan filed suit against Officer David Kapus alleging false arrest and excessive force under 42 U.S.C. § 1983, and intentional infliction of emotional distress. After a jury trial, Officer Kapus was found not liable for excessive force, liable for false arrest, and liable for intentional infliction of emotional distress. The jury awarded Mr. Gaytan $10,000 in compensatory damages and $20,000 in punitive damages.

There are several motions before this court. Officer Kapus filed numerous post-trial motions. Mr. Gaytan moves for a new trial on the excessive force claim pursuant to Federal Rule of Civil Procedure 60(b)(3), seeks sanctions for discovery abuses, and seeks attorneys' fees and costs. For the reasons set forth below, Officer Kapus' post-trial motions are denied, Mr. Gaytan's motion for a new trial is denied, Mr. Gaytan's motion for sanctions is granted in part and he is awarded $3,000, and I award Mr. Gaytan $193,361.25 in attorneys' fees and $3,987.20 in costs.

*Officer Kapus' Post–Trial Motions*

Officer Kapus has filed several post-trial motions. First, he seeks judgment as a matter of law on Mr. Gaytan's false arrest and intentional infliction of emotional distress claims. He argues that Mr. Gaytan offered no evidence of lack of probable cause to support a false arrest claim, that he was entitled to qualified immunity on the false arrest claim, and that Mr. Gaytan did not establish that his conduct was extreme and outrageous or willful and wanton to support intentional infliction of emotional distress. This motion is denied. There was substantial evidence to support the jury's finding of false arrest and intentional infliction of emotional distress.

Officer Kapus seeks to strike the judgment for punitive damages, or in the alternative for a remittitur. He argues that the evidence shows he did not have the resources to pay such a large award and that the judgment is inconsistent with the jury's verdict in that it found him not liable for excessive force. I do not find the punitive damages

amount of $20,000 excessive or inconsistent with the verdict. Officer Kapus was found liable on two of the three counts.

Finally, Officer Kapus seeks a new trial on numerous grounds: (1) failure to use Officer Kapus' proposed jury instructions; (2) erroneous admission of 404(b) evidence; (3) erroneous allowance of jury instructions on 404(b) evidence and on the fact that Mr. Gaytan was not tried; (4) erroneous evidentiary rulings; (5) improper argument during Mr. Gaytan's closing; and (6) discriminatory use of peremptory challenges in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Except for the issue of peremptory challenges, the motions do not require extensive discussion and are denied as without merit. I gave Office Kapus ample opportunity to present his jury instructions and any argument about the denial of any of his proposed instructions is therefore waived. I believe my decision to allow the 404(b) evidence and the jury instruction on 404(b) evidence was correct. I do not find any reversible error in my evidentiary rulings, in allowing the instruction on the criminal proceedings against Mr. Gaytan, or in the arguments during closing.

 As for the *Batson* issue, in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the Supreme Court extended the reach of *Batson* to prohibit discrimination on the basis of gender in the exercise of peremptory challenges. To prove discrimination, the opponent of a peremptory challenge must first make out a prima facie case of gender discrimination. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). The burden of production then shifts to the proponent of the strike to come forward with a gender-neutral explanation. *Id.* The explanation need not be persuasive, or even plausible; it will be accepted unless discriminatory intent is inherent in the explanation given. *Id.* at 768, 115 S.Ct. 1769. If a gender-neutral explanation is offered, the opponent of the strike must prove purposeful gender discrim-

ination. *Id.* at 767, 115 S.Ct. 1769. The burden of persuasion regarding gender motivation rests at all times with the opponent of the strike. *Id.* at 768, 115 S.Ct. 1769.

In this case, Officer Kapus made a timely *Batson* challenge and presented a prima facie case of gender discrimination. Mr. Gaytan used two of his three peremptory challenges to remove two of the remaining three men left on the venire after the jurors challenged for cause were removed.[1]

The burden of production then shifted to Mr. Gaytan to offer gender-neutral explanations for striking potential juror number 7, Kenneth Hebner, and number 14, Ronald Gregory. Mr. Gaytan offered two reasons for striking Mr. Hebner. He claimed that Mr. Hebner would not be able to give his "full attention" to the trial because of his "obligations at work" and that he would "not understand some of the intricacies of urban life" involved in the trial given that he resided in Lombard, Illinois. (R. at 112). Mr. Gaytan said that he struck Mr. Gregory because he was a "person who has shown a history of believing in loyalty" and this fact would make him "reluctant to accept [a] code of silence" theory to explain the other officers' testimony in support of Officer Kapus. (R. at 113–14). Furthermore, Mr. Gaytan believed that Mr. Gregory, "given his background, ... would not award the type of damages that other jurors would award." (R. at 114). These reasons are gender neutral and are not inherently discriminatory.

 Officer Kapus argues that the reasons offered to strike Mr. Hebner were pretext for gender discrimination because Mr. Gaytan did not seek to strike similarly-situated female jurors. For example, one female juror, Ms. Heintz, voiced concern with the length of the trial because she was moving within 11 days (R. at 59), but Mr. Gaytan did not strike her because she could not give her full attention to the trial. Furthermore, there were several female jurors who were from suburban areas such as Westmont (R. at 31), Glen Ellyn (R. at 34), Addison (R. at

---

**1.** The parties and the court agreed to adjust the selection process to facilitate the selection of the one remaining male juror. (R. at 116–17). Officer Kapus, however, never agreed to waive his

*Batson* challenge by accepting that adjustment. According to Officer Kapus, he would have had two men on the jury but for the gender discrimination.

35), and Plainfield (R. at 39), but Mr. Gaytan did not strike them because of their inability to understand urban life.

"*Batson* is not violated whenever two veniremen of different [sexes] provide the same responses and one is excused and the other is not.... This is so because counsel must be entitled to make credibility determinations in exercising peremptory challenges." *Matthews v. Evatt*, 105 F.3d 907, 918 (4th Cir.) (citation omitted), *cert. denied,* ___ U.S. ___, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997); *see also Burks v.. Borg*, 27 F.3d 1424, 1429 (9th Cir.1994), *cert. denied,* 513 U.S. 1160, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995). In this case, when the court asked if any of the jurors had any problems with the length of the case, Mr. Hebner, a comptroller for a manufacturing company, raised his hand and said that he had "a lot of obligations at work." (R. at 28, 56). Ms. Heintz stated that she was moving and jury service "couldn't come at a worst [sic] time" but she also indicated that someone advised her to "hang in there and hope for the best." (R. at 59). Mr. Gaytan's counsel was entitled to make the credibility determination as to who would be able to give his or her full attention to the trial and thus, I do not find this reason pretextual.

■ On the other hand, the explanation that Mr. Hebner was from Lombard is not legitimate since most of the female jurors were also from the suburbs. This explanation, however, was not Mr. Gaytan's primary reason for striking Mr. Hebner. Given that there was a legitimate reason for striking Mr. Hebner and that Mr. Gaytan did agree to strike a female juror to allow a male juror to sit, *see Burks*, 27 F.3d at 1429 (the fact that the prosecutor accepted minorities on the jury is a valid consideration in determining whether a prosecutor violated *Batson* ), I do not find that there was purposeful gender discrimination.

■ As to Mr. Gregory, Officer Kapus argues that the reasons offered for striking him were pretextual because they were not rationally based on any of his statements. Mr. Gregory stated that he was president of his local (R. at 37) and claimed that it was his "duty to sit in as a representative and distribute jobs" to his people. (R. at 58). Further he said that he had experiences with the police: "being an officer of a union, I have had experience on the picket lines with them.... When we had supported them, and then they turned around and won't let us even be there, and this is my experience." (R. at 87). This is sufficient to support Mr. Gaytan's argument that he was concerned that Mr. Gregory expects loyalty from union members and the police, and that Mr. Gregory might look favorably on police loyalty within its ranks.

### Mr. Gaytan's Motion for a New Trial

Rule 60(b) of the Federal Rules of Civil Procedure provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

Fed.R.Civ.P. 60(b). Mr. Gaytan contends that he should be relieved from the final judgment denying his excessive force claim because Officer Kapus misrepresented facts and engaged in misconduct during discovery.

### A. Factual Background

On March 25, 1996, Mr. Gaytan propounded interrogatories and specifically asked whether Officer Kapus had ever had disciplinary complaints ("CR's") filed against him and requested a list of such charges including the number, name of complainant, and disposition. Officer Kapus objected to this request on numerous grounds but did eventually produce on July 26, 1996 a computer printout listing all CR's against him for the period between September 26, 1986 and September 22, 1995. Mr. Gaytan requested the production of eleven of those CR's which were produced.

Prior to the production of the list and the actual CR's, Officer Kapus was deposed and was asked about complaints of excessive force before and after the incident with Mr. Gaytan on October 9, 1995. He testified that

he could not recall how many excessive force complaints had been registered against him before the incident and stated that none had been reported subsequently. On June 26, 1997, Officer Kapus was deposed again and asked specifically about the CR's involving Mr. and Mrs. Claus and Mr. Conroy.

On November 5, 1997, after the trial, Mr. Gaytan's counsel learned of another excessive force complaint against Officer Kapus, CR 177437, stemming from a July 18, 1990 incident (the "1990 CR"). When it was brought to the court's attention, defense counsel stated that they had no knowledge of the 1990 CR prior to that time. They responded that they turned over everything that they were given by the Chicago Police Department and that the omission of the 1990 CR was the result of a data systems error. I then ordered Officer Kapus to produce the 1990 CR and ordered defense counsel to conduct an investigation to determine whether there were any additional CR's and to produce any that were found.

The search revealed four additional CR's subsequent to October 9, 1995 and to Officer Kapus' first deposition in July, 1996. One CR involved Dr. Barbara Berger (the "Berger CR"), who spoke to Officer Kapus in November, 1996 when she came to the police station to report a break-in and looting at her recently burned home.[2] (Berger Aff. ¶¶ 2–4). Dr. Berger stated that Officer Kapus yelled at her and accused her of trying to perpetrate insurance fraud. (Id. ¶ 5). She left the station in tears. (Id. ¶ 8). Another CR related to an encounter between David Forbes and Officer Kapus (the "Forbes CR").[3] Mr. Forbes stated that on August 9, 1997, after a dispute at a Cubs game, he came to the station to inquire about a friend who had been arrested and to report that he had been assaulted. (Forbes Aff. ¶¶ 2–3). Officer Kapus refused to press assault charges and Mr. Forbes told him that he was being unfriendly and unhelpful. (Id. ¶¶ 4–5). Officer Kapus then came around the desk, yelling "right now" several times before stating that Mr. Forbes was going to jail. (Id. ¶¶ 6–7). Mr. Forbes stated that he was then physically assaulted, placed in a headlock, pulled across the station foyer, pulled through a door and into a little office where he was pushed head first against a door and then a cement wall before being handcuffed to a pipe. (Id. ¶¶ 7–8).[4]

## B. Rule 60(b)(3)

■ "Relief under Rule 60(b)[(3)] is an extraordinary remedy that is to be granted only in exceptional circumstances." *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir.1995). To obtain such relief, Mr. Gaytan must prove by clear and convincing evidence that: (1) he maintained a meritorious claim at trial, and (2) because of the fraud, misrepresentation, or misconduct of Officer Kapus, (3) he was prevented from fully and fairly presenting his case at trial. *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir.1995). "In considering these requirements, a court must weigh the competing policy interests of the finality of judgment against fundamental fairness in light of all of the facts." *Id.*

■ Mr. Gaytan presented a meritorious claim of excessive force at trial. Officer Kapus misrepresented the number of civilian complaints filed against him. He did not disclose the 1990 CR. Officer Kapus contends that the nondisclosure was unintentional and merely the result of a computer glitch by the Chicago Police Department. Not only should Officer Kapus have known about the complaints filed against him but it also irrelevant whether or not the nondisclosure was intentional since Rule 60(b)(3) applies to both intentional and unintentional misrepresentations. *Id.* Additionally, Officer Kapus compounded the misrepresentation by not supplementing his discovery responses with the additional four CR's which were all initiated after his first deposition. Those CR's were clearly within the scope of Mr. Gaytan's dis-

---

**2.** The Berger CR was initiated on December 5, 1996.

**3.** The Forbes CR was initiated on August 11, 1997.

**4.** Neither party discusses the factual background of the other two CR's. CR number 237745 was initiated on June 25, 1997. CR number 229693 was initiated sometime in late August, 1996.

covery request.[5] As soon as Officer Kapus learned of the CR's, he should have disclosed them because he knew from his first deposition in July, 1996 that Mr. Gaytan was interested in those CR's.[6] It does not matter that the CR's occurred after discovery was answered or after it was closed because under Federal Rule of Civil Procedure 26(e) Officer Kapus was required to supplement discovery.[7]

■ The final inquiry is whether the nondisclosure of all of Officer Kapus' CR's prevented Mr. Gaytan from fully and fairly presenting his case at trial. This determination does not require the court to find that the misrepresentation altered the result of the case. *Id* . "Rule 60(b)(3) protects the fairness of the proceedings, not necessarily the correctness of the verdict." Id.

The only CR nondisclosure that has any relevance to the excessive force claim is the CR involving Mr. Forbes. Mr. Gaytan contends that he was unfairly prejudiced by his inability to present evidence relating to Mr. Forbes' encounter with Officer Kapus which was similar to his encounter. He argues that the evidence of similarity is strong and compelling evidence that Officer Kapus used excessive force against him. Mr. Gaytan had the opportunity, however, to present evidence of two separate CR's during his case in chief. That evidence demonstrated that on two other occasions, Officer Kapus lost his temper, exploded verbally and/or physically against a civilian, and then escalated his threats against the civilian by falsely arresting him and/or using unjustified physical force. The additional testimony of Mr.

Forbes would have been cumulative of the evidence that was presented to the jury.

Additionally, although 404(b) evidence is admissible to show motive, intent, plan, knowledge, or absence of mistake or accident, I found that the 404(b) evidence in this case was particularly relevant to show intent. *See* October 17, 1997 Minute Order. Mr. Gaytan does not seek to offer Mr. Forbes' testimony to establish intent (because events after the Gaytan incident are not probative of intent at the time of the incident) nor does he indicate any other legitimate purpose for the testimony. He wants to introduce the testimony to show that it is more likely that Officer Kapus "acted in the same manner against plaintiff and used excessive force against plaintiff" as he did against Mr. Forbes. Pl.'s Reply Brief at 10–11. This purpose is pure propensity evidence which is prohibited by Rule 404(b).

In summary, in light of the extraordinary nature of this remedy, the interests in finality of judgment, and the nature of the misrepresentation, I do not find that Mr. Gaytan was prevented from fully and fairly presenting his case such that the finality of judgment should be disturbed.

### Sanctions

■ Mr. Gaytan seeks sanctions for the failure to disclose the 1990 CR and the four other CR's discovered after the court ordered a search of Officer Kapus' files for all CR's. He argues that sanctions are authorized under Rules 26(e), 26(g), and 37(d) of the Federal Rules of Civil Procedure as well as under the court's inherent powers.[8]

---

5. I did not find an implicit understanding that Mr. Gaytan was only interested in pre-incident CR's. During Officer Kapus' deposition, Mr. Gaytan's attorneys inquired about subsequent CR's.

6. There is no burdensome duty to conduct an ongoing investigation into CR's because Officer Kapus was informed of CR's against him; he did not have to conduct any investigation.

7. Rule 26(e) requires in relevant part that:
 A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information there-

after acquired if ordered by the court or in the following circumstances:
 . . .
 (2) A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect. . . .

8. Rule 37(d) is not applicable because it involves sanctions for the failure to serve answers to interrogatories and to respond to requests for inspection. The conduct involved here is not the total failure to respond but rather incomplete responses.

Rule 26(g)(2) requires an attorney to sign all discovery requests, responses, and objections. The signature constitutes a certification that to the best of the attorney's knowledge, information, and belief, "formed after a reasonable inquiry," the request, response, or objection is consistent with the rules, not interposed for an improper purpose, and not unreasonable. Fed.R.Civ.P. 26(g)(2).

> If without substantial justification a certification is made in violation of the rule, the court, upon motion or upon its own initiative, shall impose upon the person who made the certification, the party on whose behalf the disclosure, request, response, or objection is made, or both, an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee.

Fed.R.Civ.P. 26(g)(3).

Mr. Gaytan contends that Officer Kapus' attorneys did not make reasonable inquiry to determine whether the CR's produced represented a complete list of all of his CR's. Officer Kapus' counsel contends that the 1990 CR was not disclosed because of a glitch in the Chicago Police Department's computer system. They never stated that they asked Officer Kapus whether the list generated was a complete list of all complaints. Nevertheless, given the nature of this suit, I can understand why defense counsel would prefer to rely on Chicago Police Department files rather than on Officer Kapus' memory.[9] Thus, although defense counsel should have asked Officer Kapus about his complaints and should in the future examine the files underlying the computer generated list, I do not find their reliance on the Chicago Police Department list so unjustified as to warrant sanctions.

On the other hand, as noted above, Officer Kapus violated Rule 26(e) by failing to supplement his discovery responses when he knew that other CR's had been filed against him. Although Rule 26(e) does not explicitly authorize sanctions, district courts have the authority to sanction parties who violate Rule 26(e).

> The federal courts' supervision of the discovery process, and the courts' concomitant authority to upbraid those who do not play by the rules, is rooted in the need for maintaining the integrity of the trial process. Hence the impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules.

*Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir.1992). Officer Kapus cannot be allowed to be less than candid about complaints filed against him.

"[A] district court confronted with a violation of Rule 26(e) can fashion an appropriate sanction from a wide range of options." *Id.* Because Officer Kapus knew about the Forbes' CR before trial and failed to supplement discovery when he knew that Mr. Gaytan sought excessive force CR's, he is sanctioned $3,000 to be paid to Mr. Gaytan.

### Attorneys' Fees and Costs

Under 42 U.S.C. § 1988, the prevailing party in a § 1983 suit may obtain reasonable attorneys' fees and costs as determined by the court. Mr. Gaytan, as the prevailing party, seeks $207,415.00 in attorney's fees and $3,987.20 in costs.[10] Since Officer Kapus does not object to the costs, those are granted. Mr. Gaytan is entitled to $193,361.25 in attorneys' fees.[11]

9. In Officer Kapus' deposition, he claims that he remembers receiving excessive force CR's but cannot definitively state how many or relate the details of each complaint.

10. The fee request includes fees listed in Plaintiff's Second Supplemental Petition for Attorneys' Fees and Costs ("Second Petition"). The Second Petition lists fees related to post-trial motions and the fee petition. Officer Kapus did not re-

spond to the Second Petition. Because Mr. Gaytan is the prevailing party, I award him fees for the time listed in the Second Petition.

11. The breakdown of the fees awarded is as follows:

| | |
|---|---|
| Jeffrey Haas: | 351.35 hours at $300 per hour |
| Jan Susler: | 283.75 hours at $260 per hour |
| Joey Mogul: | 113.45 hours at $125 per hour. |

■ The initial estimate of a reasonable attorney's fee, or lodestar, is properly calculated by multiplying the number of hours reasonably expended on the litigation times the prevailing hourly market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 888, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Officer Kapus contests both the hours expended and the market rate.

## A. Market Rate

■ "The market rate is 'the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Eddleman v. Switchcraft, Inc.*, 965 F.2d 422, 424 (7th Cir.1992) (quoting *Henry v. Webermeier*, 738 F.2d 188, 193 (7th Cir.1984)). Thus, the market rate for Mr. Gaytan's attorneys would be the rate which lawyers in the Chicago area of similar ability and experience charge in § 1983 cases.

Mr. Gaytan seeks $325 per hour for Mr. Haas' time, $260 per hour for Ms. Susler's time, and $125 per hour for Ms. Mogul's time. To determine whether these rates are reasonable, the parties have resorted to the battle of the affidavits. The only rate that gives me pause is that of Mr. Haas. Officer Kapus offers the affidavit of George Weaver who states that the reasonable rate is $250 per hour. Mr. Gaytan offers affidavits which state that $300 to $350 per hour is the reasonable rate. I will split the difference and award fees for Mr. Haas at $300 per hour. This is consistent with awards by other courts for this level of experience in civil rights litigation, *see, e.g., Quinones v. City of Evanston*, 91 C 3291, 1995 WL 656690, at *5–6 (N.D.Ill. Nov. 6, 1995) (awarding Kenneth Flaxman, an attorney practicing law for 23 years, $300 per hour), and with the rate Mr. Haas stated in his settlement offer to Officer Kapus and in the contingency fee agreement signed between Mr. Gaytan and Mr. Haas.

## B. Hours Expended

### 1. Drafting Complaint

Mr. Haas spent 7.8 hours drafting the complaint. Officer Kapus argues that the time spent was excessive given Mr. Haas' near 30 years of experience in civil rights litigation. Furthermore, Mr. Gaytan's complaint should not have taken 7.8 hours given that Mr. Haas drafted two similar complaints for two other clients in December of 1994. Since Mr. Haas concedes that he could have been more efficient, I reduce the time by half (3.9 hours).

### 2. Motion to Dismiss

Officer Kapus argues that the 9.7 hours spent by Mr. Haas in responding to the motion to dismiss was excessive given that the legal issues on intentional infliction of emotional distress were not novel nor complex and that defense attorneys had already done most of the research. I do not find 9.7 hours excessive given the importance of the motion. Mr. Gaytan eventually prevailed on the motion and on his claim for intentional infliction of emotional distress.

### 3. Jury Instructions

Officer Kapus claims that Mr. Gaytan's attorneys spent an excessive amount of time preparing jury instructions. Ms. Susler spent 5 hours drafting jury instructions. Mr. Haas did not clearly delineate his time, spending 39.2 hours on preparing motions in limine, jury instructions, voir dire questions, and answering Officer Kapus' motions in limine. He estimates that two-thirds of that time was spent on the motions in limine and thus approximately 13 hours were spent on jury instructions. I do not think the time is excessive given the number of issues and the importance of instructions.

### 4. Discovery

Officer Kapus objects to 8.4 hours spent by Mr. Haas on propounding written discovery and responding to written discovery. This time is not excessive and will not be reduced.

### 5. Trial Preparation

Officer Kapus claims that at 11 a.m. on April 24, 1997, the original April 28, 1997 trial date was continued, and thus, the 4.7 hours spent by Mr. Haas on trial preparation and meeting with co-counsel that day was unreasonable and unnecessary. In addition, he points out that Ms. Susler never listed

that she spoke to or met with Mr. Haas that day. Mr. Haas, however, states that he worked on the trial prior to the 11 a.m. conference call while he was en route to his destination on the east coast and that he did confer with Ms. Susler. Although there is insufficient support for the meeting with Ms. Susler, given that the trial was four days away and that Mr. Haas did the work before learning of the continuance, I allow four hours.

### 6. Depositions

Both Mr. Haas and Ms. Susler prepared for and attended the depositions of Mr. and Mrs. Claus and Officer Kapus. The attendance of both attorneys was not required and thus the fee is duplicative. Mr. Haas' time is reduced by 4.5 hours.

### 7. Excessive and Unnecessary Research

Officer Kapus objects to the hours Ms. Mogul spent on researching and preparing written material on 404(b) evidence after September 1997 (32.5 hours), the admissibility of depositions of an unavailable witness (6 hours) the admissibility of evidence regarding acquittal of underlying charges (6 hours), the admissibility of OPS findings (11.5 hours) the tort immunity statute (4 hours), and indemnity (5 hours). I find two research areas excessive. First, the hours spent on the 404(b) evidence is excessive given the time already spent briefing and researching this issue on numerous prior occasions. I can understand shepardizing cases to ensure that the law had not changed, but not much more should be required. Thus, I will only allow 20 hours. As for the admissibility of deposition testimony of an unavailable witness, all one has to do is look at Federal Rule of Evidence 804(b)(1); 6 hours of research is unnecessary. Thus, I reduce Ms. Mogul's research time by 33.5 hours.

### C. Offset

Officer Kapus seeks to offset any attorneys' fees by the amount agreed upon in the contingency fee agreement. According to the agreement, if Mr. Gaytan prevailed, he would be required to pay his attorneys 40% of the award. I decline to reduce the award to Mr. Gaytan by requiring him to pay part of the attorneys' fees. Section 1988 clearly contemplates that the prevailing party can get his fees from the nonprevailing party.

### Conclusion

Officer Kapus' post-trial motions are denied. Mr. Gaytan's motion for a new trial is denied. Mr. Gaytan's motion for sanctions is granted in part and he is awarded $3,000. As the prevailing party, Mr. Gaytan is also entitled to $193,361.25 in attorneys' fees and $3,987.20 in costs.